FILED

02/10/2026

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 25-0584

DA 25-0584

IN THE SUPREME COURT OF THE STATE OF MONTANA

2026 MT 22N

IN THE MATTER OF:

R.L.B.,

    A Youth in Need of Care.

APPEAL FROM:   District Court of the Ninth Judicial District,
In and For the County of Teton, Cause No. DN-23-002
Honorable Gregory L. Bonilla, Presiding Judge

COUNSEL OF RECORD:

    For Appellant:

        Shannon Hathaway, Hathaway Law Group, Missoula, Montana

    For Appellee:

        Austin Knudsen, Montana Attorney General, Roy Brown, Assistant
Attorney General, Helena, Montana

        Joe Coble, Teton County Attorney, Jennifer Stutz, Deputy County
Attorney, Choteau, Montana

Submitted on Briefs: January 21, 2026

Decided: February 10, 2026

Filed:

_____
Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, we decide this case by memorandum opinion. It shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 In December 2022, the Department of Public Health and Human Services, Child and Family Services Division, received reports that two-year-old R.L.B. was in danger of being abused or neglected after law enforcement received a call for domestic disturbance and assault in the home. At that time, Mother was the legal custodian of R.L.B., and Father's last known location was Bend, Oregon. The Department removed R.L.B. from the home and placed him with his paternal step-grandparents.

¶3 On January 26, 2023, the District Court granted the Department's petition for emergency protective services. Father was appointed counsel four days later, and was personally served on February 15, 2023. In May 2023, paternity testing confirmed that Father was R.L.B.'s biological father.

¶4 On June 6, 2023, the District Court adjudicated R.L.B. a youth in need of care and granted temporary legal custody to the Department. That December, the Department petitioned for a six-month extension of temporary legal custody, which the District Court granted without objection until July 9, 2024.

¶5 On July 1, 2024, the Department petitioned to terminate Mother's parental rights for failure to successfully complete a treatment plan. Ten days later, the Department petitioned

2

to terminate Father's parental rights based on abandonment. At the August 13, 2024 termination hearing, the court terminated Mother's parental rights and continued Father's termination hearing pending appointment of new counsel.

¶6 Approximately two months later, Father was sentenced in Oregon to 36 months of supervisory probation after being convicted of Felon in Possession of a Firearm. On October 31, 2024, Father violated his probation and was sentenced to 30 months of incarceration followed by 24 months of probationary supervision, subject to sanctions including imprisonment. Father appeared remotely from the Snake River Correctional Institution in Oregon at the January 7, 2025 termination hearing. At the hearing, the Department sought to add Father's long-term incarceration as a basis for termination. Father's counsel argued that the Department's petition failed to incorporate Father's incarceration as a basis for termination. The court took this under advisement and postponed termination, pending its consideration of counsel's arguments. The court subsequently denied the Department's termination petition but allowed it to amend and file a second petition.

¶7 The Department filed an amended petition on May 14, 2025, to include long-term incarceration as a basis for termination. On July 22, 2025, the court held a termination hearing and ordered termination of Father's parental rights based on both abandonment, §§ 41-3-609(1)(b), 41-3-102(1)(a)(i), MCA, and long-term incarceration, § 41-3-609(4)(c), MCA. The court found that Father had not manifested an intent to parent. The court gave primary consideration to R.L.B.'s special medical and behavioral needs. On appeal, Father argues that the District Court's findings were clearly erroneous because

3

substantial evidence did not support that Father abandoned R.L.B.. The Department counters that throughout the proceedings Father showed little interest or ability to parent R.L.B.. It argues that Father's criminal history, homelessness, and current long-term incarceration support the District Court's finding of his inability to parent in the future.

¶8 This Court reviews a district court's termination of parental rights for abuse of discretion. *In re I.K.*, 2018 MT 270, ¶ 10, 393 Mont. 264, 430 P.3d 86 (citation omitted). A district court abuses its discretion if "it acts arbitrarily, without employment of conscientious judgment, or exceeds the bounds of reason resulting in substantial injustice." *In re I.K.*, ¶ 10 (citation omitted).

¶9 The Department must prove the statutory criteria for termination by clear and convincing evidence. Sections 41-3-422, -609, MCA; *In re A.N.W.*, 2006 MT 42, ¶ 51, 331 Mont. 208, 130 P.3d 619 (citation omitted). "[W]here a district court relies on more than one statutory basis in terminating parental rights, any one basis, if correctly relied upon, is sufficient to support termination under § 41-3-609(1), MCA." *In re S.T.*, 2008 MT 19, ¶ 15, 341 Mont. 176, 176 P.3d 1054 (citations omitted).

¶10 Father argues primarily that the Department did not prove by clear and convincing evidence that he abandoned R.L.B.. The District Court, however, also terminated Father's parental rights based on long-term incarceration. Long-term incarceration may serve as an independent basis for termination. Section 41-3-609(4)(c), MCA; *In re I.K.*, ¶ 23; *In re A.N.W.*, ¶¶ 49, 51; *In re J.A.S.*, 2010 MT 47, ¶ 14, 355 Mont. 302, 228 P.3d 1119. Parental rights may be terminated without a treatment plan if the parent will be incarcerated for more than one year and reunification is not in the child's best interest because of the

4

"child's circumstances, including placement options, age, and developmental, cognitive, and psychological needs . . . ." Section 41-3-609(4)(c), MCA. When the court terminated Father's parental rights, Father had nearly two years remaining on the incarceration portion of his sentence for violating his probation, more than the statutory threshold.

¶11 Father was not present when R.L.B. was born and had not provided care for R.L.B. prior to or throughout these proceedings. Father only minimally engaged with R.L.B. and the Department throughout the proceedings. Outside of the occasional video call with Father, R.L.B. does not know Father. His lack of engagement evidences no intent to parent.

¶12 At the time of termination, R.L.B. lived with his maternal aunt and her husband. R.L.B. has a genetic condition that affects his sight and kidney health and is on the autism spectrum. His maternal aunt reported that she has family members with R.L.B.'s same genetic condition. She appeared well-equipped to meet his needs and was proactive in seeking appropriate medical care. R.L.B. was also receiving speech therapy, physical therapy, and behavioral health services.

¶13 These proceedings began when R.L.B. was two and, by the termination hearing, had continued for over two years. At the time of termination, the Court Appointed Special Advocate (CASA) recommended that R.L.B. not be placed in Father's custody. The CASA emphasized that due to his medical condition and behavioral problems, R.L.B. needed consistency, stability, and a home where caregivers were able to provide for his special needs. Throughout the proceedings, R.L.B. had been placed six separate times. The CASA advised that R.L.B. was doing well with his maternal aunt, who understood and provided for his special needs. The CASA recommended R.L.B. remain with his present placement.

¶14 Regardless of the District Court's alternative reliance on abandonment, we conclude that § 41-3-609(4)(c), MCA, supports its decision. Father's long-term incarceration serves as an independent basis for termination of his parental rights. *In re S.T.*, ¶ 15. The best interest of the child "is paramount and must take precedence over parental rights" when a district court considers terminating a parent's rights. Section 41-3-101(7), MCA; *In re A.N.W.*, ¶ 51 (internal quotations and citation omitted). R.L.B. is a young child with special medical and behavioral needs. Father has never cared for R.L.B. and has not otherwise shown an ability to parent. In light of the "child's circumstances, including placement options, age, and developmental, cognitive, and psychological needs," § 41-3-609(4)(c), MCA, the District Court did not abuse its discretion in concluding that it is in R.L.B.'s best interest to remain with his maternal aunt.

¶15 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review. The District Court did not abuse its discretion when it terminated Father's parental rights. The judgment is affirmed.

/S/ BETH BAKER

We Concur:

/S/ JAMES JEREMIAH SHEA
/S/ KATHERINE M. BIDEGARAY
/S/ INGRID GUSTAFSON
/S/ JIM RICE

6